IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Sgt. Willie Acker, USAR, | ) | C.A. No. 6:06-3538-HMH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION & ORDER** |
| vs. | ) | |
| | ) | |
| Greenville Surgery Center Limited | ) | |
| Partnership d/b/a Greenville Surgery | ) | |
| Center, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Greenville Surgery Center Limited Partnership d/b/a Greenville Surgery Center's ("Defendant") motion for summary judgment. For the reasons stated below, the court grants in part and denies in part the Defendant's motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff, Willie Acker ("Plaintiff") was employed by the Defendant on September 9, 2003, as an orderly until he was administratively terminated on June 8, 2004, for three consecutive "no call/no shows" on June 4, 7, and 8, 2004. (Def.'s Mem. Supp. Summ. J. Ex. Q (Acker Dep. at 173).) Throughout his employment, the Defendant alleges that the Plaintiff's job performance was poor. The Defendant submits that it had decided to terminate the Plaintiff due to poor job performance, chronic tardiness, and theft of supplies on June 1, 2004. (Id. Ex. V (Tollison Dep. at 9 & Ex. P (Tollison Decl.¶ 10)).) However, the Plaintiff never returned to work. Joyce Tollison ("Tollison"), the Defendant's facility administrator, in consultation with the human resources department made the decision to terminate the Plaintiff.

1

Tollison indicated that the human resources department required that the Plaintiff be discharged in person. (Id. Ex. P (Tollison Decl. ¶¶ 10, 13).) Therefore, when the Plaintiff did not return to work he was administratively terminated for failing to report to work or call. (Id. Ex. P (Tollison Decl.¶ 16 & Ex. 6 (Personnel Action Form)).)

The Plaintiff submits that he did not report to work because he began military duty on June 7, 2004, and that upon his return from military duty on June 27, 2004, he received his COBRA notice notifying him of his termination. (Pl.'s Mem. Opp'n Summ. J. (Acker Dep. at 226-28).) The Plaintiff alleges that he informed Angela Kay ("Kay"), his direct supervisor, and Sabrina Elliott ("Elliott"), a charge nurse, of his impending military duty in June 2004. (Def.'s Mem. Supp. Summ. J. Ex. Q (Acker Dep. at 260-62).) However, the Defendant alleges that the Plaintiff never informed Kay and Elliott and that indisputably, Tollison, the facility administrator who made the decision to terminate the Plaintiff, did not know that he had military duty in June 2004. (Id. Ex. T (Kay Dep. at 20-22), Ex. R (Elliott Dep. at 31-34), & Ex. V (Tollison Dep. at 47-48).)

The Plaintiff filed the instant lawsuit on December 14, 2006. The Plaintiff alleges that the Defendant (1) violated the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") by failing to reemploy him after he returned from military duty and discriminating and retaliating against him in violation of USERRA, (2) breached an employment contract with him by failing to pay him while on leave, and (3) violated the South Carolina Payment of Wages statute by failing to pay him. The Defendant moved for summary judgment on the Plaintiff's claims on December 17, 2007. The Plaintiff responded on January 4, 2008, and the Defendant replied on January 14, 2008.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 604 (D. Md. 1998).

3

**B. The Defendant's Motion for Summary Judgment**

1. USERRA Claim

a. Reemployment Claim

The Plaintiff alleges that the Defendant violated the USERRA by failing to reemploy him after he returned from military duty in June 2004.  The Defendant alleges that this claim cannot survive summary judgment because the Plaintiff (1) never reported back to work or sought reemployment, and (2) the Defendant had already decided to terminate the Plaintiff for poor performance, chronic tardiness, and theft before he went on military duty.  (Def.'s Mem. Supp. Summ. J. 1-2.)

38 U.S.C. § 4312 (2002) provides in pertinent part that:

> (a)   Subject to subsections (b), (c), and (d) and to section 4304, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if–
> (1)   the person . . . has given advance written or verbal notice of such service to such person's employer;
> . . . . and
> (3)   except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

The Plaintiff alleges that he informed Kay and Elliott of his June 2004 military duty. (Def.'s Mem. Supp. Summ. J. Ex. Q (Acker Dep. at 260-62).)  Kay and Elliott deny that he informed them.  (<u>Id.</u> Ex. T (Kay Dep. at 20-22) & Ex. R (Elliott Dep. at 31-34).)   Further, the Defendant alleges that the Plaintiff failed to follow its procedures for notifying it of military duty.  However, § 4312(a)(1) states that verbal notice is sufficient.  Moreover, Kay testified that in practice, when the Plaintiff had military duty, he would notify her verbally or provide a letter.

(Id. Ex. T. (Kay Dep. at 24-25).) In addition, the Plaintiff alleges that other employees knew that he had upcoming military duty. (Pl.'s Mem. Opp'n Summ. J. 7.) Based on the foregoing, genuine issues of material fact exist regarding whether the Plaintiff provided verbal notice to the Defendant regarding his June 2004 military leave.

In addition, the Defendant argues that it had a legitimate reason to terminate the Plaintiff's employment prior to his military duty. Therefore, the Defendant could not have violated USERRA. However, the Defendant administratively terminated the Plaintiff's employment because he failed to report for work for three days in June 2004. (Id. Ex. P (Tollison Decl.¶ 16 & Ex. 6 (Personnel Action Form)).) During two of these days, the Plaintiff was on military duty. Based on the foregoing, there is a genuine issue of material fact regarding this issue.

Further, the Defendant argues that the Plaintiff failed to seek reemployment after the conclusion of his military duty in violation of § 4312(e)(1)(A) (2002). Section 4312(e)(1)(A) provides that

> [i]n the case of a person whose period of service in the uniformed services was less than 31 days, by reporting to the employer--
> (i)     not later than the beginning of the first full regularly scheduled work period on the first full calendar day following the completion of the period of service and the expiration of eight hours after a period allowing for the safe transportation of the person from the place of that service to the person's residence; or
> (ii)    as soon as possible after the expiration of the eight-hour period referred to in clause (i), if reporting within the period referred to in such clause is impossible or unreasonable through no fault of the person.

In determining whether an individual has sought reemployment, the court must conduct a "case-by-case determination which focuses on the intent and reasonable expectations of both the

former employee and employer, in light of all the circumstances." Baron v. U.S. Steel Corp., 649 F. Supp. 537, 541 (N.D. Ind. 1986). The Plaintiff alleges that it was "impossible or unreasonable through no fault of [his own]" to report back to work because upon his return the Plaintiff received a COBRA letter indicating that he had been terminated. (Pl.'s Mem. Opp'n Summ. J. 7; Def.'s Mem. Supp. Summ. J. Ex. Q (Acker Dep. at 226-28).) The Defendant argues that the Plaintiff's failure to seek reemployment was unreasonable given "the obvious confusion surrounding the exact dates of his military leave." (Def.'s Mem. Supp. Summ. J. 22.) In light of the COBRA letter indicating that the Plaintiff had been terminated, the court finds that there is a genuine issue of material fact concerning whether it was unreasonable for the Plaintiff not to report back to work. Based on the foregoing, the Defendant's motion for summary judgment on the USERRA reemployment claim is denied.

### b. Discrimination/Retaliation Claim

The Defendant alleges that any claim of discrimination or retaliation in violation of USERRA fails because the Plaintiff's military duty was not a factor in the decision to terminate him and the Plaintiff would have been terminated irrespective of his military duty.[1] (Id. 24-29.) The USERRA prohibits "discriminatory actions where the employee's military status is a 'motivating factor' in the decision, even if the employee's military status is not the sole factor in the decision." Hill v. Michelin North America, Inc., 252 F.3d 307, 312 (4th Cir. 2001). "If the employee establishes that his military status was a motivating factor in the employer's decision, USERRA then shifts the burden of proof to the employer, allowing the employer to avoid

---

[1]The Defendant also alleges that the Plaintiff failed to adequately plead a discrimination or retaliation claim in his Complaint. The court disagrees and finds that this claim has been adequately pled. (Compl. ¶¶ 21-22, 24-26.)

6

liability only if 'the employer can prove that the action would have been taken in the absence of' the employee's military status." Id. (citing 38 U.S.C. § 4311(c)(1)). The burden of proof is a preponderance of the evidence. Kirkendall v. Dep't of Army, 479 F.3d 830, 867 (Fed. Cir. 2007).

The Plaintiff was terminated for failing to report to work and not calling for three consecutive days. (Def.'s Mem. Supp. Summ. J. Ex. Q (Acker Dep. at 173).) The Plaintiff was on military duty for two of these days. The Defendant alleges that the Plaintiff's military service was not a factor in the decision to terminate him because Tollison did not know that the Plaintiff was serving on military duty. (Id. Ex. V (Tollison Dep. at 47-48).) However, as set forth above, issues of fact exist concerning whether the Defendant knew that the Plaintiff was serving on military duty in June 2004.

In addition, the Defendant submits that the Plaintiff would have been terminated for poor job performance, chronic tardiness, and theft irrespective of his military duty. Although there is evidence in the record that the Defendant intended to fire the Plaintiff for poor job performance, chronic tardiness, and theft, the Plaintiff was ultimately terminated for failing to report to work or call. (Id. Ex. P (Tollison Decl. Exs. 3, 4 & 5).) Therefore, genuine issues of material fact exist concerning whether the Defendant would have terminated the Plaintiff irrespective of his military duty. Based on the foregoing, the Defendant's motion for summary judgment on the Plaintiff's USERRA discrimination and retaliation claim is denied.

### 2. Breach of Contract Claim

The Defendant alleges that the breach of contract claim fails because the Plaintiff was an at-will employee. "At-will employment is generally terminable by either party at any time, for

any reason or for no reason at all." Small v. Springs Indus., Inc., 388 S.E.2d 808, 810 (S.C. 1990). "The general rule is that termination of an at-will employee normally does not give rise to a cause of action for breach of contract." Conner v. City of Forest Acres, 560 S.E.2d 606, 610 (S.C. 2002). "However, where the at-will status of the employee is altered by the terms of an employee handbook, an employer's discharge of an employee may give rise to a cause of action for wrongful discharge." Id. An employee "handbook forms an employment contract when: (1) the handbook provision(s) and procedure(s) in question apply to the employee, (2) the handbook sets out procedures binding on the employer, and (3) the handbook does not contain a conspicuous and appropriate disclaimer." Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C. Ct. App. 2006).

The Plaintiff argues that the at-will employment relationship was altered by the following language in the employee handbook.

> Full-time and part-time employees who have at least six months of service with HEALTHSOUTH and are called to short-term or active United States Armed Forces service will be granted a military leave of absence. The Company complies with federal and state laws regarding military leave.
> The employee will receive pay for the normal work schedule during a military absence. Once the employee returns to work, the employee must supply HEALTHSOUTH with a copy of all military vouchers. HEALTHSOUTH will then adjust the paychecks to deduct the money received from the military during the military leave.

(Def.'s Mem. Opp'n Summ. J. Ex. Q (Acker Dep. Ex. 8 at 9).) On the cover of the employee handbook it states that "[t]his handbook . . . is not an employment contract." (Id. Ex. Q (Acker Dep. Ex. 8 at 1).) Further, at the beginning of the handbook it states that "It is also understood that employment with HEALTHSOUTH is at will and for an indefinite period and may be

terminated, with or without cause, at the will of either the employee or the Company." (Id. Ex. Q (Acker Dep. Ex. 8 at 1).)

The military leave policy does not create a genuine issue of material fact regarding the at-will nature of the Plaintiff's employment with the Defendant. The military leave policy is merely a gratuitous provision whereby the Defendant agrees to pay a legitimate employee while he is on military leave. Further, the military leave policy indicates that it complies with federal and state law, which generally requires the employer to grant military leave. See e.g., Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 755 (E.D. Va. 1991) ("A general statement of policy to abide by federal law (*e.g.*, Title VII) cannot reasonably be construed as a deviation from at-will employment. Nor do plaintiffs' cited statements regarding maternity leave and employment performance (the latter being contained in a section of the handbook concerning substance abuse) persuasively detract from the clear statement of at-will terms."); Courter v. K-Mart Corp., Civ.A. No. 86-2486, 1988 WL 219717, at *5 (D. Kan. Mar. 18, 1988) (unpublished) (finding "no evidence to indicate that the defendant's leave policies implicitly modified his employment contract in such a way as to limit the application of the employment-at-will doctrine" because the medical and personal leave, granted at defendant's discretion; leave for jury duty and subpoenaed court appearances; and disability leave policies "do not provide any basis for implying that defendant could terminate plaintiff only for good cause or that plaintiff's employment would be for a specific duration"). Therefore, the Defendant's motion for summary judgment is granted on the Plaintiff's breach of contract claim.

3. South Carolina Payment of Wages Claim

The Plaintiff's claim under the South Carolina Payment of Wages statute fails because military leave payments do not constitute wages. The term wages is defined as

> all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract.

S.C. Code § 41-10-10(2) (Supp. 2007). Military leave payments are not wages. Matthews v. City of Greenwood, 407 S.E.2d 668, 670 (S.C. Ct. App. 1991). Military leave pay is not "an amount at which labor rendered is recompensed." Id. "Neither is it vacation, holiday, or sick leave." Id. Based on the foregoing, the Defendant is entitled to summary judgment on this claim. The court notes that if the Plaintiff is successful on the USERRA claim, then he would be entitled to payment pursuant to the military leave policy in the handbook.

It is therefore

**ORDERED** that the Defendant's motion for summary judgment, docket number 45, is granted in part and denied in part.

**IT IS SO ORDERED.**

> s/Henry M. Herlong, Jr.
> United States District Judge

Greenville, South Carolina
January 15, 2008